IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HARRIS CONSTRUCTION COMPANY, | § | |
| LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION H-07-3468 |
| | § | |
| GGP-BRIDGELAND, L.P., AND | § | |
| ROUSE-HOUSTON, L.P., | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

The above referenced cause, removed from state court on diversity jurisdiction, alleges failure by Defendants and Counter-Plaintiffs GGP-Bridgeland, L.P. and Rouse-Houston, L.P. (collectively, "GGP-Bridgeland")[1] to pay for construction work performed on the North Bridgelands Lake Parkway ("Parkway") in the Bridgeland master planned community in Cypress, Texas, in violation of the Prompt Pay Act, Tex. Prop. Code §§ 28.001-28.010, and common-law breach of contract.

Pending before the Court is Plaintiff Harris Construction Company, Ltd.'s motion for partial summary judgment (instrument

---

[1] GGP-Bridgeland, L.P. represents that it is the successor in interest to Rouse Houston, L.P. as the owner of the planned community, Bridgeland. #44 at 5, ¶ 17. Rouse L.P. ceased to exist when the change-of-name certificate was filed to change the name of Rouse L.P. to GGP-Bridgeland. *Id.*

#37) on GGP-Bridgeland, L.P.'s counter-claims for breach of implied warranty, promissory estoppel, and indemnity.[2]  After reviewing the briefing and the record, the Court concludes that the motion for partial summary judgment should be denied for reasons stated in this opinion.

Since Plaintiff filed the motion for partial summary judgment, the undersigned Judge granted Plaintiff's motion for leave to designate Triple B Services, LLP ("Triple B"), Cowboy Construction ("Cowboy"), Raba-Kistner Consultants, Inc, ("Raba-Kistner"), Addicks Services, Inc. ("Addicks"), and Blue Grass Maintenance,

---

[2]  GGP-Bridgeland has also asserted counterclaims against Harris Construction for breach of contract, negligence, and breach of express warranty.

GGP-Bridgeland's Second Amended Original Counter-Claim states that it contracted with Plaintiff to construct culverts for a faux bridge structure and related water, sanitary sewer, and storm sewer utility systems connecting public access to the North Bridgelands Lake Parkway.  #44 at 4, ¶ 15.  Around March 2006, GGP-Bridgeland claims it noticed fractures and cracks in the surface of the concrete paving over the area of the Parkway where the faux bridge structure is located.  It claims that there was faulty and defective workmanship and/or use of improper and/or insufficient materials.  Therefore around August 2006 it began withholding from Plaintiff payment of the unpaid retainage specified in the Contract per GGP-Bridgeland's right to withhold such retainage.  *Id.* at 6, ¶¶ 21-12.

At IB-7, 21, the contract defines "retainage" as follows:

Per Section 49.276(d) of the Texas Water Code provides that Districts shall retain ten percent (10%) of the estimated amount of progress payments until final completion and acceptance of the contract work, however, if the District, at any time after 50% of the work has been completed, finds that satisfactory progress has been made, it may authorize remaining payments to be made in full.

Inc. ("Blue Grass") as responsible third parties. #31, 39.[3] Furthermore, United States Magistrate Judge Frances H. Stacy granted GGP-Bridgeland's motion for leave to amend its counterclaim to add Triple B and Blue Grass as counter defendants in this lawsuit. #40, 43.

### Standard of Review

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 317, 323 (1986). The substantive law governing the claims identifies the essential elements and thus indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 317, 325 (1986).

If the moving party meets its burden, the non-movant must direct the court to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*,

---

[3] A responsible third party is "any person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these." Tex. Civ. Prac. & Rem. Code § 33.011.

477 U.S. at 324. "A factual dispute is deemed 'genuine' if a reasonable juror could return a verdict for the nonmovant, and a fact is considered 'material' if it might affect the outcome of the litigation under the governing substantive law." *Cross v. Cummins Engine Co.*, 993 F.2d 112, 114 (5th Cir. 1993). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts"; it must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Anderson*, 477 U.S. at 249. Conjecture, conclusory allegations, unsubstantiated assertions and speculation are not adequate to satisfy the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1079 (5th Cir. 1994); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002). Although the court draws all reasonable inferences in favor of the non-movant, the non-movant "cannot defeat summary judgment with conclusory, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Center*, 476 F.3d 337, 343 (5th Cir. 2007).

**Plaintiff's Motion for Partial Summary Judgment (#37)**

Plaintiff's motion for partial summary judgment on puts forth the following arguments on three of GGP-Bridgeland's counter-claims: (1) Texas courts do not recognize a cause of action for breach of implied warranty of good and workmanlike performance in

commercial projects; (2) because an express written contract governs the agreement between the parties, the counter-claim for promissory estoppel is barred; and (3) the counterclaim for indemnity is barred because the contractual indemnity clause fails to meet the "fair notice" requirements under Texas law.

Regarding the breach of implied warranty claim, Plaintiff acknowledges that the Texas Supreme Court and lower appellate courts have recognized an implied warranty of good and workmanlike construction for new homes. *Centex Homes v. Buecher*, 96 S.W. 3d 266, 269-73 (Tex. 2002); *Humber v. Morton*, 426 S.W. 2d 554, 555 (Tex. 1968). The Texas Supreme Court explains its rationale for replacing the doctrine of *caveat emptor* with the new implied warranty of good and workmanlike construction:

> The purchase of a home is not an everyday transaction for the average family, and in many instances is the most important transaction of a lifetime. To apply the rule of *caveat emptor* to an inexperienced buyer, and in favor of a builder who is daily engaged in the business of building and selling houses, is manifestly a denial of justice.

*Humber*, 426 S.W. 2d at 561. The high court characterized the implied warranty as a "gap filler" or "default warranty," i.e., the warranty applies only if the parties have not expressed a contrary intention in their agreement as to how the builder or the structure is to perform. *Buecher*, 95 S.W. 3d at 273.

Here, insists Plaintiff, the implied warranty of good and workmanlike construction does not apply. Defendants here are

sophisticated entities responsible for developing a large master community by using many different contractors, so that the retention of Plaintiff cannot be characterized as "the most important transaction" of GGP-Bridgeland's corporate life. Moreover, Article I, 1.1, entitled "Scope of Work," of the written contract[4] between the parties, dated December 9, 2004, establishes how Harris Construction is to perform its work:

> Contractor shall furnish all labor, materials, equipment, supervision, and other services to perform the work described in the Drawings and Specifications attached as **Exhibit "A"**, and any requirements set forth in any other Contract Documents and enumerated in Article XIX (hereinafter the "Work").

Moreover the rationale for an implied warranty does not apply to commercial construction contracts, but only residential ones, insists Plaintiff.

Plaintiffs also contends that GGP-Bridgeland's counter-claim for promissory estoppel[5] is barred under Texas law, because the

---

[4] Ex. B to #37.

[5] The elements of promissory estoppel are (1) a promise; (2) foreseeability of reliance by the promisor; and (3) substantial reliance by the promisee to his detriment. *English v. Fischer*, 660 S.W. 2d 521, 524 (Tex. 1983); *Sandel v. ATP Oil & Gas Corp.*, 243 S.W. 3d 749, 753 (Tex. App.––Houston [14th Dis.] 2007). To demonstrate detrimental reliance, a plaintiff must show that he materially changed his position in reliance on the promise. *Id.* at 524 (finding no detrimental reliance where plaintiff could not demonstrate that he would not have taken his detrimental actions if defendant had not made promise); *id.* Promissory estoppel does not apply to a promise covered by a valid contract between the parties, but it does apply to a promise outside of the contract. *Richter v. Wagner Oil Co.*, 90 S.W. 3d 890, 899 (Tex. App.––San Antonio 2002, no pet.); *El Paso Healthcare Sys., Ltd. v. Piping Rock Corp.*, 939

doctrine presumes that no written contract exists between the parties. *Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W. 3d 212, 226 (Tex. 2002). If a valid contract exists between the parties and covers the alleged promise, a plaintiff cannot recover under promissory estoppel. *Vertic v. Spencer*, 247 S.W. 3d 242, 250 (Tex. App.--El Paso 2007, pet. denied); *El Paso Healthcare System Limited v. Piping Rock Corp.*, 939 S.W. 2d 695, 699 (Tex. App.--El Paso 1997, writ denied). If a valid contract exists, the injured party must seek damages under the contract. *El Paso Healthcare*, 939 S.W. 2d at 699.

Here, argues Plaintiff, GGP-Bridgeland insists that it is counter-suing Harris Construction over promises that are expressly covered by the written contract. GGP-Bridgeland alleges that Harris Construction promised it would "(1) Complete the work in accordance with the Plans and Specifications; and (2) Perform its work in a good and workmanlike manner." As noted above, Article I, 1.1 of "Scope of Work" of the Agreement states that Harris Construction is to perform its work as described in the Drawings and Specifications. Also as noted, Texas courts do not imply a warranty for good and workmanlike construction into commercial construction contracts. Plaintiff argues that GGP-Bridgeland's recourse is to counter-sue Harris Construction for breach of contract, as it has.

--------

S.W. 2d 695, 699 (Tex. App.--El Paso 1997, writ denied).

Finally, Plaintiff maintains that the counter-claim for indemnity is barred under the "fair notice" doctrine of Texas law. The two components for "fair notice" are the express negligence doctrine and the conspicuousness requirement. *Storage and Processors, Inc. v. Reyes*, 134 S.W. 3d 190, 192 (Tex. 2004). Under the express negligence doctrine,

> The parties seeking to indemnify the indemnity from the consequences of its own negligence must express that intent in specific terms. Under the doctrine of express negligence, the intent of the parties must be specifically stated within the four corners of the contract.

*Ethyl Corp. v. Daniel Construction Co.*, 725 S.W. 2d 705, 708 (Tex. 1987).  The doctrine applies to both the indemnitee's sole negligence and its comparative negligence.[6]  *Id*. at 708-09.  The Texas Supreme Court has gradually expanded the express negligence doctrine to require that other forms of liability, including strict liability, be specifically expressed within the four corners of the contract for the contractual indemnity clause to be enforceable. *See, e.g., Houston Lighting and Power Co. v. Atchison, Topeka and*

---

[6]  GGP-Bridgeland insists that the sole or comparative negligence of the indemnitee is not the subject of the contract's indemnification provision.  Instead it expressly excludes the sole negligence of the indemnitee from its scope and it expresses the intent to exclude the "partial negligence" of the indemnity from its scope in any jurisdiction where it may be unenforceable.  In Texas, fair notice requirements apply to indemnification for an indemnitee's comparative fault, so paragraph 16.1 would be construed to apply only to Plaintiff's negligence.  Moreover because 16.1 does not seek indemnification for sole negligence or the comparative fault of GGP-Bridgeland, the fair notice requirements for indemnity contracts do not apply here.

*Santa Fe Railway Co.*, 890 S.W. 2d 455, 458 (Tex. 1994).

The conspicuous requirement mandates that "something appear on the face of the contract to attract the attention of a reasonable person when he looks at it." *Dresser Industries, Inc. v. Page Petroleum, Inc*., 853 S.W. 2d 505, 508 (Tex. 1993). For example, language is conspicuous when in larger type, contrasting colors, or otherwise calls attention to itself. *Id.* at 511.

GGP-Bridgeland's counter-claim for indemnity alleges that "Harris County Construction agreed to indemnify GGP-Bridgeland against losses and damages arising out of or in any way connected with damage to the property and caused in whole or in part by Harris Construction." It seeks to enforce a contractual indemnity clause, Article XVI, 16.1, on page 8 of the contract (Ex. B to #37):

> **Indemnity.** Contract shall to the fullest extent permitted by law defend, reimburse, indemnify and hold harmless Owner, Engineer, Developer (as defined in the Contract documents) and their officers, agents, employees, contractors and consultants from and against any and all claims, losses, suits and damages (including attorney's fees and legal expenses) arising out of or in any way connected with claims arising out of injury to persons or damages to property, and caused in whole or in part by the Contractor; provided, however, that Contractor is not required to indemnify Engineer for any matter arising out of the preparation of plans and specifications for the Project. In no event shall this indemnity be deemed to cover claims caused by the sole negligence of an indemnitee hereunder. In the event that the law of the jurisdiction where the Project is located does not allow for indemnification by a Contractor of the partial negligence of an indemnitee, this indemnity shall be construed so as to provide that the Contractor's indemnity shall be construed so as to provide that the

Contractor's indemnity responsibility only extends to the
negligence of the Contractor and anyone for whom
Contractor may be responsible.  Contractor shall turn the
Work over to Owner free and clear of all liens, claims
and encumbrances, and shall defend, indemnify and hold
harmless Owner from all such liens, claims and
encumbrances arising out of the Contractor's performance
of the Work, including attorney's fees and legal
expenses.  Contractor shall bond off or otherwise
discharge any lien or encumbrance filed against any
Project within ten (10) days of written demand by Owner,
whether or not Contractor believes the claim is valid.

Plaintiff contends that this indemnity provision fails to meet
either of the "fair notice" requirements.  It does not express the
intent of the parties to indemnify GGP-Bridgeland from the
consequences of its own sole or comparative negligence and it is
inconspicuous in the 34-page contract.

### GGP-Bridgeland's Response (#38)

GPP-Bridgland argues there is a notable exception to the
general rule that promissory estoppel is barred where the promise
on which the claim is based is covered by an express contract:
promissory estoppel does apply to a promise made outside of a valid
contract between the parties.  *Richter*, 90 S.W. 3d at 899; *Barnett
v. Coppell North Texas Court, Ltd.*, 123 S.W. 3d 804, 825 (Tex.
App.--Dallas 2003, pet. denied); *El Paso Healthcare*, 939 S.W. 2d at
699.  It objects that Plaintiff relies on the construction contract
between the parties and on "an incomplete recitation of the
allegations in GGP-Bridgeland's First Amended Original Counter-

-10-

Claim ('Counter-Claim')[7] as the sole basis for summary judgment on promissory estoppel." #38 at 3.  Moreover, argues GGP-Bridgeland, Plaintiff confuses the work to be performed in the "Scope of Work" section in the contract with the quality of work and the materials to be used in the work to be performed.  GGP-Bridgeland points to paragraph 30 in the Counter-Claim, which paragraph 36 incorporates by reference into the promissory estoppel allegations, and identifies the alleged promise outside the contract:  "Harris . . . *represented* that the materials and work furnished under the Contract would be of good quality, free from faults and defects and in conformance with the Contract. [emphasis added]"[8]

Regarding "fair notice" requirements of the express negligence doctrine and conspicuousness, GGP-Bridgeland contends that they apply only to extraordinary agreements, e.g., to indemnity agreements or other risk shifting arrangements that relieve a party

_____

[7] The First Amended Counter-Claim (#4) has been superseded by the Second Amended Original Counter-Claim (#44). Paragraph 30 in the First Amended Counter-Claim appears as paragraph 54 in the Second Amended Original Counter-Claim, while paragraph 60 in the Second Amended Original Counter-Claim incorporates it by reference into the promissory estoppel allegations.

[8] Although in this response, filed August 6, 2009, GGP-Bridgeland argues that Plaintiff's motion is premature because the deadline to amend pleadings was extended to September 1, 2009 and discovery was extended to March 26, 2010, because the parties have amended their pleadings, filed summary judgment briefs, and discovery is almost closed, the Court finds the argument moot. Since then the Court has granted a further extension to accommodate the newly added parties (#59), who are not involved in the partial summary judgment dispute.

of liability for *its own negligence* before it might occur. *Storage & Processors, Inc. v. Reyes*, 725 S.W. 3d 190, 193 (Tex. 2004), *citing Ethyl Corp.*,725 S.W. 2d at 707; *Dresser Indus.*, 853 S.W. 2d at 509-10. The Texas Supreme Court has refused to expand the fair notice doctrine beyond such extraordinary risk-shifting agreements. *Storage & Processors,* 725 S.W. 3d at 193.

In the instant case, the indemnity provision was not meant to relieve a party in advance of its liability for its own negligence. *Id.* at 507 ("It is important to note that our discussion today is limited solely to those types of releases which relieve a party in advance of liability for *its own negligence*."). The express negligence component of the fair notice doctrine is not applicable where an indemnitee is seeking indemnification from claims not based upon its own negligence. *DDD Energy v. Veritas DGC Land, Inc.*, 60 S.W. 3d 880, 885 (Tex. App.--Houston [14[th] Dist.] 2001, not pet.). See footnote 6 of this Opinion and Order.

Even if the provision were the type of indemnity contract to which the fair notice requirements applied, GGP-Bridgeland insists that it satisfies both components. Moreover, argues GGP-Bridgeland, generally a provision is "conspicuous" when a reasonable person against whom it is to operate should have noticed it. *Dresser Indus.*, 853 S.W. 2d at 508. Texas law does not mandate that the font, color, and size of the indemnity provision be distinct from the surrounding text to be conspicuous; it is

conspicuous "if a reasonable person against whom the clause is to operate ought to have noticed it." *Dresser*, 853 S.W. 2d at 511. The heading for 16.1, **"ARTICLE XVI INDEMNITY**," is in different font size, bold, and in all capital letters–all objectively distinguishing features to put a reasonable person on notice... There is at least a question of fact as to whether the provision satisfies the fair notice requirement of conspicuousness.

Last of all, GGP-Bridgeland argues that Plaintiff also misstates the law regarding the implied warranty of good and workmanlike construction. Arguing that the warranty can apply to nonresidential, commercial projects, GGP-Bridgeland cites *Continental Dredging, Inc. v. De-Kaiserized, Inc.*,120 S.W. 3d 380 (Tex. App.–-Texarkana 2003, pet. denied), in which the jury found a breach of implied warranty of good and workmanlike construction in a dredging operation in the Port of Houston where the contractor failed to dredge all the way to the contracted depth of 36 feet. *Id.* at 391 ("the failure to complete the work required to be performed under a contract is a breach of the warranty of good and workmanlike manner").

### Court's Decision

The Court concludes that GGP-Bridgeland has correctly summarized the relevant law and its application here.

In Texas, breach of implied warranty of good and workmanlike construction has been expanded beyond ordinary vulnerable home

buyers in the residential context to sophisticated entities in a commercial contest where the contractor failed to complete the work it was required to perform under the contract.[9]  In addition to *Continental Dredging*, 120 S.W. 3d 380 (applied to a project to dredge a uniform depth of 36 feet in front of De-Kaiserized's dock in the Houston ship channel), cited by GGP-Bridgeland, the Court points to *Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804 (Tex. App.--Dallas 2003, pet. denied)(finding that a contractor's failure to complete work on an athletic complex breaches warranty of good and workmanlike performance). *See also Carrasco v. F&D Group, Inc.*, No. 04-06-00529CV, 2007 WL 4244204, *8 (Tex. App.--San Antonio Dec. 5, 2007)(*inter alia* finding sufficient evidence for jury to decide whether F&C breached an implied warranty of good and workmanlike performance in its failure to properly construct a trench for an electrical duct bank to connect electrical services to  a nine-building complex to house medical practices).

Promissory estoppel does not bar the indemnity counterclaim here because GGP-Bridgeland alleges a promise outside of the parties' contract, i.e., that "the materials and work furnished under the Contract would be of good quality, free from faults and defects and in conformance with the Contract." *Richter*, 90 S.W. 3d

---

[9] Texas has long recognized a warranty to repair or modify existing tangible goods or property in a good and workmanlike manner. *Melody Home Mfg. Co. v. Barnes*, 71 S.W. 2d 349, 353 (Tex. 1987).

at 899; *El Paso Healthcare*, 939 S.W. 2d at 699.

Finally, the fair notice requirements (the express negligence doctrine and conspicuousness) do not apply to the indemnity claim here because the provision in the contract does not purport to relieve Plaintiff in advance of liability for its own negligence and is thus not an extraordinary risk-shifter. *Storage & Processors*, 725 S.W. 3d at 193; Dresser *Indus.*, 853 S.W. 2d at 508.

Accordingly, the Court

ORDERS that Plaintiff's motion for partial summary judgment (#37) is DENIED.

**SIGNED** at Houston, Texas, this 12th day of March, 2010.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE