IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

HARRIS CONSTRUCTION COMPANY,   §
LTD.,   §
   §
       Plaintiff,   §
   §
VS.   §   CIVIL ACTION H-07-3468
   §
GGP-BRIDGELAND, L.P., AND   §
ROUSE-HOUSTON, L.P.,   §
   §
       Defendants.   §

### OPINION AND ORDER

The above referenced cause, removed from state court on diversity jurisdiction, alleges failure by Defendants and Counter-Plaintiffs GGP-Bridgeland, L.P. and Rouse-Houston, L.P. (collectively, "GGP-Bridgeland")[1] to pay for construction work performed on the North Bridgelands Lake Parkway ("Parkway") in the Bridgeland master planned community in Cypress, Texas, in violation of the Prompt Pay Act, Tex. Prop. Code §§ 28.001-28.010, and common-law breach of contract.

Pending before the Court are (1) Third Party Defendant Raba-Kistner Consultants, Inc.'s ("Raba-Kistner's") motion to dismiss

---

[1] GGP-Bridgeland, L.P. represents that it is the successor in interest to Rouse Houston, L.P. as the owner of the planned community, Bridgeland.  #44 at 5, ¶ 17.   Rouse. L.P. ceased to exist when the change-of-name certificate was filed to change the name of Rouse L.P. to GGP-Bridgeland.  *Id.*

pursuant to Fed. R. Civ. P. 12(b)(6) (instrument #60) the breach of implied warranty claim against it in Harris Construction Company, Ltd.'s ("Harris's") Third-Party Complaint[2]; and (2) Raba-Kistner's motion to dismiss pursuant to Sections 150.001 & 150.002 of the Texas Civil Practice and Remedies Code (#62).

### Factual Allegations in Harris'

### Original Third-Party Complaint Against Raba-Kistner

Paragraphs 18 and 19 in Third-Party-Plaintiff Harris's Original Third Party Complaint, #46 at 4, constitute the factual allegations against Raba-Kistner, an engineering firm:

> 18. Rouse, LP and/or GGP-Bridgeland entered into a contract or series of contracts with Raba-Kistner to provide construction materials testing of soils and concrete used for construction of Bride B-3 of the Parkway. Raba-Kistner's field tests were performed for the benefit of GGP-Bridgeland and the contractors working on the site.
> 19. Raba-Kistner was to provide field technicians on a full-time, not just on as-called or as-needed, basis to test and verify soil conditions of fill materials installed at Bridge B-3. The contract documents do not limit Raga-Kistner's obligations to GGP-Bridgeland or Rouse, LP, and industry practice allows for contractors to rely upon tests performed by construction materials testing laboratories. During original construction, Raba-Kistner represented that the fill materials were of the type specified and were installed in accordance with the contract documents. In 2006, after the pavement on Bridge B-3 showed signs of distress, Raba-Kistner opined that the soils were not properly the soils Harris Construction installed at Bridge-3 were not a specified in the contract documents and/or an insufficient number of tests were performed on the installed soils.

---

[2] The relevant third-party complaint is instrument #46.

Paragraph 24 recites,

> **Breach of Implied Warranty.** Acting as Third-Party Plaintiff, Harris Construction would show that Raba-Kistner owed and breached an implied warranty that its services were accurate and sufficient for the purpose in view. *Shintech, Inc. v. Group Constructors, Inc.*, 688 S.W. 2d 144 (Tex. App.–Houston [14th Dist.] 1985, no writ); *Newell v. Mosley*, 469 S.S. 2d 481, 483 (Tex. app.–Tyler 1971, writ ref'd n.r.e.).  Raba-Kistner's breach of implied warranty is the producing cause of Harris Construction's alleged damages.

Seeking to recover damages, Third-Party-Plaintiff Harris asserts claims against Raba-Kistner for contribution and negligent misrepresentation, in addition to the challenged claim for breach of an implied warranty that its services were accurate and sufficient for the purpose in view, arising out of Raba-Kistner's responsibility for "construction materials testing of soils and concrete used for" the construction of Bridge B-3 of the Parkway (the "Project").  Harris relies on *Shintech, Inc. v. Group Constructors, Inc.*, 688 S.W. 2d at 151("'Where the contract is silent on the subject, there is an implied warranty that the plans and specifications for a construction job are accurate and sufficient for the purpose in view.'"), *citing Newell v. Mosley*, 469 S.W. 2d at 483 ("'Subject to some exceptions, if a party furnishes specifications and plans for a contractor to follow in a construction job, he thereby warrants their sufficiency for the purpose in view. . . .'")(*quoting* 17A C.J.S. § 329, at 294).

**Raba-Kistner's Motion to Dismiss Claim**

**for Breach of Implied Warranty**

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint "for failure to state a claim upon which relief can be granted." Dismissal under the rule is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied sub nom. Cloud v. United States*, 536 U.S. 960 (2002), *cited for that proposition in Baisden v. I'm Ready Productions*, No. Civ. A. H-08-0451, 2008 WL 2118170, *2 (S.D. Tex. Tex. May 16, 2008). *See also ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 57 (S.D. Tex. 2007)("Dismissal "'can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" [citation omitted]), *reconsidered in other part*, 396 B.R. 278 (S.D. Tex. 2008).

Raba-Kistner argues that Texas does not recognize a cause of action for breach of implied warranty of professional services. *Murphy v. Campbell*, 964 S.W. 2d 265, 268-69 (Tex. 1997)(agreeing with a party that Texas does not recognize a cause of action for breach of implied warranty of professional services).[3] He insists

_____

[3] Raba-Kistner, by taking a sentence out of context, misrepresents the holding of *Murphy. Murphy,* 964 S.W. 2d at 269,

that the Texas Supreme Court has expressly rejected a claim for implied warranty for good and workmanlike performance of professional services where other adequate remedies of law exist to redress the alleged wrong. *Dennis v. Allison*, 698 S.W. 2d 94, 96 (Tex. 1985).[4] Therefore under Texas law there can be no implied warranty for the professional services provided by Raba-Kistner, he insists.

In response, Harris disagrees and argues that in the special context of construction law, Texas courts have held that professionals that provide plans and specifications for a contractor to follow impliedly warrant those plans and

_____

cites *Dennis v. Allison*, 698 S.W. 2d 94, 96 (Tex. 1985), in which a patient sued her psychiatrist for physical abuse. The Texas Supreme Court observed that an implied warranty arises by operation of law when public policy mandates and held that "an implied warranty should not be judicially imposed absent a showing that there was a need for it." *Dennis*, 698 S.W. 2d at 96. It refused to recognize such an implied warranty in the case before it because the patient had other adequate remedies, including claims for negligence (malpractice) and assault and battery. *Id.* In *Murphy*, in which stockholders of a corporation sued their accounting firm, the Texas Supreme Court similarly refused to impose an implied warranty of accounting services because the plaintiff already had a remedy in claim for accounting malpractice.

[4] To identify its services as "professional," Raba-Kistner points out that "construction materials testing of soils and concrete" falls under the definition of the practice of engineering set forth in the Texas Occupations Code § 1001.003 (defining the practice of engineering as including "engineering for testing or evaluation materials for construction or other engineering use . . . ."). The Code further states generally that the practice of engineering includes "any other professional service necessary for the planning, progress, or completion of an engineering service." Texas Occupations Code § 1001.193(c)(12).

specifications are adequate for the job.  Harris points to *Newell v. Mosley*, in which the court ruled, "The plans submitted by appellant constituted positive assertions that the house could be constructed on the lot.  Consequently, appellant [owner[5]] made a representation upon which [appellee] [contractor] had a right to rely without investigation."  469 S.W. 2d at 483.  In *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 624 S.W. 2d 203, 208 (Tex. App.--Houston [1st Dist.] 1981), *rev'd on other grounds*, 642 S.W. 2d 160 (Tex. 1982), the appellate court stated, "In fact, our courts have recognized that a cause of action exists in favor of a contractor against an owner or architect who furnishes defective plans and specifications."

Furthermore, urges Harris, in federal law the *Spearin* doctrine has long allowed for a cause of action for breach of warranty for professional services in the construction context.  *United States v. Spearin*, 248 U.S. 132, 137 (1918)(holding that in a contract for relocation of a sewer there is an "implied warranty" that "if the specifications were complied with," the work would be adequate).  Allowing a cause of action for breach of implied warranty for professional services, the Supreme Court shifted the responsibility for an inadequate structure away from the contractor where the

---

[5] "Owner" is used generically and refers to "the party contracting to have work done," while the "contractor" is "the party agreeing to perform the work."  *Interstate Contracting Corp. v. City of Dallas, Texas*, 407 F.3d 708, 716 n.7 (5th Cir. 2005).

contractor   was   misled   "by   erroneous   statements   in   the
specifications."  *Id.* at 136 (and cases cited therein).

Moreover, Harris argues, general principles of contract law
also support such a cause of action, i.e., that professionals
should be held to have impliedly warranted their representations
that are relied upon by contractors in the context of construction:

> If the destruction of the partly completed structure or
> the defects in it when completed are caused by the
> representation of the owner on which the contractor
> reasonably relied, or by defects in the plans and
> specifications supplied by the owner which the contractor
> was required to follow, the contractor will not be liable
> in damages for non-performance and will not be denied
> judgment for compensation.

6 Corbin, *Contracts* § 1338 at 394 (1962).   Professor Williston
writes in the same vein:

> If the owner through his architect or engineer may
> properly be regarded as having superior expert knowledge,
> and on the basis of such knowledge to have represented to
> the builder the feasibility of carrying out the owner's
> plans, the latter must be held responsible for any
> defects or omissions in them.
>
> In ordinary cases, perhaps, the builder may be supposed
> to have sufficient knowledge of what is feasible to make
> unfounded the assumption of justifiable reliance by him
> on the superior knowledge of another.
>
> However, where the work in question involves technical
> engineering skill and the plans are made by professional
> technicians or experts engaged by the owner, there seems
> to be every good reason for implying a warranty.

18 Williston, *Contracts* § 1966 (3d ed. 1978).

Harris contends that the two cases cited by Raba-Kistner do
not support dismissal because neither case addresses professional

services in the context of construction.  *Dennis*, 698 S.W. 2d 94, examined whether a patient could sue her psychiatrist to recover for beating and sexual assault under a theory of breach of implied warranty.  The court concluded, "It is not necessary to impose an implied warranty as a matter of public policy because the plaintiff patient had adequate remedies to redress wrong committed during treatment."  *Id.* at 96.  In turn, *Murphy v. Campbell* dealt with a claim for breach of implied warranty against an accounting firm. The court concluded, "There is no more need for an additional remedy for accounting malpractice than there is for medical malpractice.  A plaintiff may obtain full redress in an action for negligence or breach of contract.  In addition, the DTPA provides relief in certain circumstances."  964 S.W. 2d at 269.

### Court's Decision

In researching this issue, the Court has found that there is a history of conflicting decisions of Texas courts  regarding the implied warranties of professionals who prepare plans and specifications used by contractors, as demonstrated by the following cases selected from many possibilities by the Court.

In an early but significant case, *Lonergan v. San Antonio Loan & Trust Co.*, 104 S.W. 1061 (1907), contractor Thomas Lonergan & Company ("Lonergan") was sued by the San Antonio Loan & Trust Co. ("SALT") to recover damages for a breach of contract to build a house for SALT on a specified lot according to plans and

specifications submitted by SALT and made by architect Alfred Giles, hired by SALT, and for a bond guaranteeing performance. When almost completed, the building fell, and the contractor refused to replace it and abandoned the project.   SALT sued the contractor for damages.  Lonergan argued that the building fell not because of any defect in the materials or work in the construction or negligence of the contractors, but because of defects in the plans and specifications furnished by SALT.   Therefore, Lonergan argued, it was not obliged to rebuild the structure or repay SALT for the work and materials furnished under the contract. Emphasizing that the parties to the agreement here were competent to contract and that there was no unfairness in the transaction, the Texas Supreme Court found that when the contractors bid on the contract, they assumed the liability:

> The trust company was willing to risk the skill of the architect and submitted the specifications to bidders for inspection and for their own determination as to whether or not they were willing to bind themselves to build the house in pursuance of and in accordance with the specifications as prepared.   The owner being satisfied with the specifications, the contractors were called upon to exercise their own judgment, and if they were not competent to judge for themselves, it became their duty to protect their interests by procuring such aid as was necessary to put them in possession of the facts.   There is no more reason why the loan and trust company should be held responsible for the alleged defects in the specifications that it did not discover for want of skill and knowledge of the business of an architect, than there is for holding Thos. Lonergan & Co. to be bound by their acceptance of the defective plans which they understood as well as the trust company did, and in all probability much better.   The fact that Lonergan & Co. contracted to construct the building according to the specifications

furnished implied that they understood the plans.

*Id.* at 1065.  Noting the long established rule that absent fraud or other improper influence, competent parties may make their own contracts for lawful purposes and will be required to perform them, the Texas Supreme Court stated that "specifications are, as a matter of law, not guaranteed by either party to the other" and concluded that SALT was "not bound as guarantor of the sufficiency of the specifications as a legal consequence of submitting them for bids on the work and entering into the contract." *Id.* at 1066.  It opined that any obligation of SALT as a guarantor of the sufficiency of the specifications must be expressed in the language of the contract or language in the contract that would justify a finding by the court that the parties intended SALT to guarantee the sufficiency of the specifications.  *Id.*  It found no such language in the contract before it.  Instead it found language permitting the owner through action of the architect to make changes, and thus by implication not guarantee the sufficiency of the original specifications.  The high court did not excuse the contractor from its obligation to build the house despite the deficient plans and specifications:

> We are of the opinion that Thos. Lonergan & Co., having failed to comply with their agreement to construct and complete the building in accordance with the contract and the specifications, must be held responsible for the loss, notwithstanding the fact that the house fell by reason of its weakness arising out of the defect in the specifications and without any fault on the part of the builder.

-10-

*Id.*

In contrast in 1918 in *Spearin*, the United States Supreme Court opined,

> [I]f the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications. . . [citations omitted]. This responsibility of the owner is not overcome by the usual clauses requiring builders to visit the site, to check the plans, and to inform themselves of the requirements of the work, as is shown by *Christie v. United States*, 237 U.S. 234 . . .; *Hollerbach v. United States*, 233 U.S. 165 . . ., and *United States v. Stage Co.*, 199 U.S. 414, 424 . . ., where it was held that the contractor should be relieved, if he was misled by erroneous statements in the specifications.

248 U.S. at 136. In *Chapman & Cole and CCP, Ltd. v. Itel Container International, B.V.*, the Fifth Circuit, in a dispute charging contractor Chapman with failure to construct a container yard adequately, followed the *Spearin* doctrine and concluded, "Chapman carried out the construction according to the plans prepared by Itel and mutually approved.  Chapman cannot be held responsible for defects in those plans."  865 F.2d 676, 682–83 (5th Cir. 1989), *cert. denied*, 493 U.S. 872 (1989).  *See also T.L. James & Co. v. Traylor Bros., Inc.,* 249 F.3d 743, 752 (5th Cir. 2002)(applying Louisiana law) in which the Fifth Circuit followed the reasoning of *Spearin* in holding that when a contractor must build according to plans and specifications prepared by the owner, the contractor is not responsible for defects caused by deficient plans and specifications.  It further observed, "An owner cannot shift this

-11-

responsibility to the contractor simply by placing the 'usual clauses requiring builders to visit the site, to check the plans, and to inform themselves of the requirements of the work.'" *Id.* [citations omitted]. Moreover it followed the United States Supreme Court's ruling that "plans and specifications within a contract impose an implied warranty that if they are adhered to, an acceptable product will result." *Id., citing Spearin*, 248 U.S. 132.

In 1971, the Tyler appellate court in *Newell v. Mosley,* followed in the spirit of *Spearin.* 469 S.W. 2d 481. Shortly after a contractor submitted the winning bid on constructing a house for the Veterans Administration, he went to the lot where it was to be built and discovered that the lot was not wide enough for the house in the plans and that the architect had made a mistake, as the architect subsequently admitted. To alter the house to fit the lot would require an additional cost of $1500, which the contractor refused to pay. The appellate court found there was a good faith mutual mistake of a material fact as a matter of law about the size of the lot that would justify giving the contractor an equitable right of rescission. Nevertheless, the court turned to the rule in 17A *C.J.S. Contracts* § 329, at 294: "'Subject to some exceptions, if a party furnishes specifications and plans for a contractor to follow in a construction job, he thereby warrants their sufficiency for the purpose in view. . . .'" *Id.* at 483. Finding that the

-12-

contractor "was not an architect or an engineer or surveyor" and that he "acted on the [architect's] implied warranty that the plans and specifications were sufficient for the purpose in view," the appeals court concluded that the contractor did not have "the duty of making an independent investigation prior to executing the contract and determining whether the plans and specifications submitted by [the architect] were correct . . . ." *Id.* It concluded that the architect's plans "constituted positive assertion that the house could be constructed on the lot" and that the contractor had a right to rely on that representation without an investigation. *Id. See also* the 1985 case of *Shintech, Inc.*, 688 S.W. 2d at 144 (where the contract is silent, an implied warranty that plans and specifications are sufficient arises).

In *Emerald Forest Utility District v. Simonsen Const. Co.*, 679 S.W. 2d 51 (Tex. App.--Houston [14th Dist.] 1984, writ ref'd n.r.e.), the owner of a failing underground sewer line sued the engineer that provided the specifications and the contractor who built it. Citing *Lonergan* for the proposition that the contractor is in as good a position as the owner to know whether the plans and specifications are adequate for their intended purpose and noting that the contract language did not expressly guarantee the design of the sewer system, the appellate court concluded that there was no justification for imposing on the owner a legal duty to insure the sufficiency of the specifications for the sewer. 679 S.W. 2d

-13-

at 52-53.  The contractor had agreed to provide all equipment, materials and labor needed to complete the sewer according to the contract.  The contractor's warranty further stated that (1) if the engineer so required before approving final payment the contractor would without cost to the owner, correct any defective work or, if the engineer rejected the work, remove it from the site and replace it with acceptable work, and (2) that the contractor would repair or replace any defects that developed within a year after the engineer issued the certificate of substantial completion.  *Id.* at 53.  The court applied *Lonergan* and concluded that the contractor was liable for breach of its promise to deliver a working sewer system, that the contractor was in a position before submitting a bid to discover the defects in the design before it contracted to build the sewer,[6] that the contractor assumed the risk that the design was insufficient when it bid, and that the fact that the engineer misjudged the conditions of the work site resulting in its specifications being insufficient did not relieve the contractor of its obligation to deliver a working sewer system free from defects. *Id.*

---

[6]  Indeed, the owner even provided the contractor with instructions warning that bidders should examine the plans and specifications carefully and notify the engineer at once in writing of any discrepancies.  It admonished, "The submission of a bid by a bidder shall be conclusive evidence that the bidder is fully acquainted and satisfied as to the character, quality and quantity of work to be performed and materials to be furnished."  679 S.W. 2d at 53.

Despite discordant Texas court decisions and Fifth Circuit cases applying Texas law, the issue whether the Texas Supreme Court would recognize Harris' claim for breach of implied warranty against Raba-Kinster in this case appears to have been resolved by a Fifth Circuit ruling in *Interstate Contracting Corp. v. City of Dallas, Texas*, 407 F.3d 708 (5th Cir. 2005), which is binding on this Court. In *Interstate Contracting*, the Fifth Circuit reviewed a broad spectrum of cases on the question, applying Texas law, and held that the Texas Supreme Court would follow the *Lonergan* rule:

> We conclude the Texas Supreme Court would require contractual language indicating an intent to shift the burden of risk to the owner in order to find an owner breached a contract by providing defective plans. The contrary rule [that failing to provide adequate or correct plans and specifications is a breach of contract in and of itself] is simply not well reasoned.

407 F.3d at 720. "In order for an owner to breach a contract by supplying inadequate plans to a contractor, *Lonergan* and its progeny require that the contract evidence an intent to shift the burden of risk of inadequate plans to the owner." *Id.* at 720-21. The same would extend to the professional hired by the owner to make the plans and specifications.

Thus if the contract between Rouse and Harris unambiguously reveals that the parties intended for Rouse and Raba-Kistner to bear the risk of deficiencies in Raba-Kistner's plans and specifications, Harris would have a cognizable cause of action against Raba-Kistner for breach of implied warranty. The Court

-15-

does not have a copy of the contract to determine what the parties intended here and cannot rule on the merits of the issue, which can be raised by a motion for summary judgment.  Not only the absence of the contract, but the lack of clarity about Texas law on the question supports giving Harris an opportunity to expand the details of its claim by amending its Third-Party Complaint against Raba-Kistner, the Court denies Raba-Kistner's Rule 12(b)(6) motion to dismiss on the grounds that Texas would not recognize a cause of action for breach of implied warranty that Raba-Kistner's services were accurate and sufficient for the purpose in view.

## Raba-Kistner's Motion to Dismiss Pursuant
## to Sections 150.001 and 150.002

Raba-Kistner moves the Court to dismiss Harris' Third-Party Complaint against Raba-Kistner *in toto* with prejudice because Harris failed to file a certificate of merit as required by § 150.002 of the Texas Civil Practice and Remedies Code (Vernon 2005) and all Harris' claims against licensed Texas engineering firm Raba-Kistner arise out of its provision of professional services.[7]

Section 150.002(a)[8] provides,

In any action suit for damages arising out of the

---

[7] Because this suit was filed in 2007 amendments that became effective on September 1, 2009 do not apply. Act of June 19, 2009, 81st Leg., R.S., ch. 789, §§ 3-4, Tex, Gen, Laws 1989-1990 (effective September 1, 2009).  All citations to the statute are to the version in effect prior to 2007.

[8]

-16-

provision of professional services by a licensed or registered professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party licensed architect, registered professional land surveyor, or licensed professional engineer competent to testify, holding the same professional licence as, and practicing in the same area of practice as the defendant, which affidavit shall set forth specifically at least one negligent act, error, or omission claimed to exist and the factual basis for each such claim.   The third-party professional engineer, registered professional land surveyor, or licensed architect shall be licensed in this state and actively engaged in the practice of architecture, surveying, or engineering.

Section 150.002(b) provides for a thirty-day extension to file the certificate of merit if the suit is filed within ten days of the expiration of limitations.   Section 150.002(d) recites, "The plaintiff's failure to file an affidavit in accordance with Subsection (a) or (b) shall result in dismissal of the complaint against the defendant" and the Court has the discretion whether to dismiss the complaint with prejudice.   The statute would apply to Raba-Kistner, a licensed engineering firm in the state of Texas that performed construction material engineering services at issue in this suit.

In response, Harris argues that § 150.002 applies to causes of action for negligence.   *Landreth v. Las Brisas Council of Co-Owners, Inc.*, 285 S.W. 3d 492, 500 (Tex. App.--Corpus Christi 2009, no pet.); *Consolidated Reinforcement, L.P. v. Carothers Executive Homes, Ltd.*, 271 S.W. 3d 887, 892 (Tex. App.--Austin 2008, no pet.); *Kniestedt v. SW Sound & Elecs.*, 281 S.W. 3d 452, 455 (Tex. App.--San Antonio 2007, no pet.).   Harris further argues that its

claim against Raba-Kistner includes a claim for negligent misrepresentation. Specifically Harris' Third-Party Complaint alleges,

> **23. Negligent Misrepresentation against Raba-Kistner.** Acting as Third-Party Plaintiff Harris Construction would show that Raba-Kistner negligently misrepresented the characteristics of the soils installed on and around Bridge B-3. Raba-Kistner made those misrepresentations in the course of its profession and in a transaction in which it had a pecuniary interest. Raba-Kistner supplied false information for the guidance of the GGP-Bridgeland and Harris Construction in their business. Raba-Kistner failed to exercise reasonable care in obtaining or communicating the information.

#46 at 5-6.

It is true, as Harris argues, that negligent misrepresentation differs from negligence in that each tort has different elements. To state a claim for negligent misrepresentation a plaintiff must allege

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Federal Land Bank Association of Tyler v. Sloane*, 825 S.W. 2d 439, 442 (Tex. 1991).

To state a claim for negligence, a plaintiff must allege "that there is a duty owed to him by the defendant, a breach of that duty, that the breach proximately caused the plaintiff injury and that damages occurred." *Cosgrove v. Grimes*, 774 S.W. 2d 662, 665

-18-

(Tex. 1989), *citing McKinney v. Stripling*, 763 S.W. 2d 407 (Tex. 1989).

The fact that the elements are different, however, does not preclude the application of Sec. 150.002 to a negligent misrepresentation claim. In *Consolidated Reinforcement* the plaintiff, Carothers Homes, brought suit against Consolidated alleging breach of contract, deceptive trade practices, negligence, negligent misrepresentation, and breach of warranty arising out of Consolidated's design and construction of house foundations. Consolidated filed a motion to dismiss pursuant to Section 150.002 for the failure of Carothers Homes to file the necessary expert affidavit. In response Carothers Homes filed a first amended original petition deleting its cause of action for negligence and argued that because the first amended petition did not contain "allegations of professional negligence by a licensed professional engineer," no affidavit was necessary. After denial of the motion to dismiss Consolidated appealed. The Austin Court of Appeals declined to dismiss the entire lawsuit, but found that "Carothers Homes was required to provide an affidavit to support its negligent misrepresentation claim to the extent the claim 'aris[es] out of professional services by a licensed or registered professional." *Consolidated Reinforcement*, 271 S.W. 3d at 894, *referencing* Tex. Civ. Prac. & Rem. Code Ann. Sec. 150.002(a). The finding was based upon the Court of Appeals' determination that "negligent

-19-

misrepresentation is a 'cause of action in which negligence [is] a necessary element.'" *Id.* at 895, *quoting* Carothers Homes's argument.  The case was remanded to the trial court "because it is not clear . . . that Carothers Homes's negligent misrepresentation claim 'arises out of the provision of professional services . . . .'" *Id.*  In the instant case, however, it is clear that the negligent misrepresentation claim does arise out of Raba-Kistner's provision of professional services.  Harris alleges in its Third Party Complaint that "Raba-Kistner made those misrepresentations in the course of its profession. . . ."

Accordingly, for the reasons indicated above, the Court

ORDERS that Raba-Kistner's Rule 12(b)(6) motion to dismiss the breach of implied warranty claim (#60) is DENIED.  Harris shall file an amended Third-Party Complaint against Raba-Kistner within twenty days of receipt of this order or inform the Court that it does not wish to pursue the cause of action.

The Court further

ORDERS that Raba-Kistner's motion to dismiss Harris' cause of action for negligent misrepresentation pursuant to Sections 150.001 and 150.002 of the Texas Civil Practice and Remedies Code (#62) is GRANTED.  Harris' cause of action against Raba-Kistner for

-20-

negligent misrepresentation is DISMISSED with prejudice.

**SIGNED** at Houston, Texas, this 12th day of  May , 2010.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE